**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TYMIA WIGGINS,<br><br>Plaintiff,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION,<br><br>Defendant. | Civil Action No. 1:26-cv-7396<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

For her Complaint against Defendant, JETBLUE AIRWAYS CORPORATION ("JETBLUE"), Plaintiff, TYMIA WIGGINS, alleges the following:

**SUBJECT MATTER JURISDICTION**

1. This Court has jurisdiction over this civil matter pursuant to 28 U.S.C. §1331 because this is an action arising under an international treaty to which the United States is a party, specifically the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 309 (the "Montreal Convention"). Article 33(1) of the Montreal Convention places treaty jurisdiction over this Article 17 passenger bodily injury claim in the United States because the United States is JETBLUE's domicile and principal place of business, it is where it has a place of business through which the contract was made, and it is the place of destination of Plaintiff's itinerary on JETBLUE's airline. Article 33(2) of the Montreal Convention also places treaty jurisdiction over this claim in the United States because the United States is the principal and permanent residence of Plaintiff, TYMIA WIGGINS.

2. The carriage at issue was "international carriage" within the meaning of Article 1(2) of the Montreal Convention. Under the contract of carriage, the place of departure was within Jamaica, and the place of destination was within the United States, with an agreed stopping place at Fort Lauderdale, Florida. Jamaica and the United States are both States Parties to the Montreal Convention.

**PERSONAL JURISDICTION AND VENUE**

3. This Court has general personal jurisdiction over JETBLUE because JETBLUE maintains its principal place of business in this District and is therefore at home in this District. JETBLUE operates regularly scheduled domestic and international flights to and from John F. Kennedy International Airport (“JFK”) in this District, leases Terminal 5 at JFK from the Port Authority of New York and New Jersey, has employees and/or agents working for it at its headquarters and at JFK in this District, and regularly solicits business from the citizens of this District.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (c)(2) because JETBLUE, the sole Defendant, resides in this District, having its principal place of business in Queens County, which lies within the Eastern District of New York, 28 U.S.C. § 112(c).

**PARTIES**

5. Plaintiff, TYMIA WIGGINS, is a natural person and United States citizen who resides in Greenbelt, Prince George's County, Maryland, where she has her principal and permanent residence. Plaintiff is an honorably discharged veteran of the United States armed forces.

6. Defendant, JETBLUE, is a corporation organized under the laws of the State of Delaware, with its principal place of business at 27-01 Queens Plaza North, Long Island City,

Queens County, New York 11101. JETBLUE is a citizen of Delaware and New York. At all relevant times, JETBLUE was a common carrier engaged in the business of transporting passengers by air for hire, including on scheduled international flights between Jamaica and the United States, and was the "carrier" within the meaning of the Montreal Convention for Plaintiff's carriage described herein. JETBLUE acted through its employees, agents, and servants, including the flight crew and ground personnel of the flights described herein, each acting within the scope of employment or agency.

**FACTUAL ALLEGATIONS**

7. Plaintiff owns and operates a boutique villa resort and hospitality business in Port Maria, St. Mary, Jamaica, and travels frequently between her home in Maryland and Jamaica.

8. Plaintiff purchased from JETBLUE a one-way ticket for carriage on June 4, 2026, from Sangster International Airport in Montego Bay, Jamaica ("MBJ"), to Ronald Reagan Washington National Airport ("DCA") in the Washington, D.C. metropolitan area, consisting of Flight 2126 from MBJ to Fort Lauderdale-Hollywood International Airport in Florida ("FLL"), and Flight 2080 from FLL to DCA. JETBLUE operated both flights.

9. Plaintiff's earlier travel from the United States to Jamaica was on another airline under a separate contract and forms no part of the carriage at issue.

10. Plaintiff has pre-existing mobility limitations, including a pre-existing condition of her right knee.

11. Plaintiff was assigned seat 17D on Flight 2126, which is an aisle seat.

12. Before Flight 2126 departed MBJ, a male passenger seated a few rows behind Plaintiff, in the vicinity of Row 22 (the "Passenger"), behaved in an unruly, belligerent, and disruptive manner in the cabin.

13. Upon information and belief, a JETBLUE flight attendant observed the Passenger's conduct and warned him before departure that he could be removed from the aircraft if his unruly behavior continued.

14. JETBLUE did not remove the Passenger from the aircraft, however, and allowed him to remain aboard for the flight, although federal law authorized JETBLUE to refuse to transport a passenger whom it decides is, or might be, inimical to safety. 49 U.S.C. § 44902(b).

15. Upon information and belief, the Passenger continued to behave in a disruptive manner during the flight, yet JETBLUE 's cabin crew took no further action to monitor, restrain, or manage him, or to plan for his deplaning in a manner that would not endanger other passengers of Flight 2126. JETBLUE 's cabin crew may have exacerbated the Passenger's recklessness by serving him alcoholic beverages during the flight.

16. Flight 2126 departed MBJ late and arrived at the gate at FLL later than its scheduled arrival time.

17. After the aircraft arrived at the gate, and while passengers were disembarking, the Passenger moved rapidly forward up the aisle from the rear of the cabin, blatantly ignoring the customary row-by-row order of deplaning. Upon information and belief, no JETBLUE crew member intervened to control the order of deplaning or to stop the Passenger from pushing forward past passengers who were rising from their seats and trying to disembark in an orderly fashion.

18. As Plaintiff was rising from her seat to retrieve her carry-on baggage and deplane in turn, the Passenger forced his way up the aisle past her, carrying a suitcase in front of his body at approximately head height.

19. In forcing his way past, the Passenger struck Plaintiff on the back of her head and neck with the suitcase, pushed into her body, and his legs became entangled with her legs and feet

while he pushed past and around her in the confined aisle. Plaintiff was knocked off balance, and her right knee was twisted by the encounter with the Passenger.

20. The Passenger's impact with Plaintiff was an unexpected and unusual event that was external to Plaintiff.

21. The Passenger's impact with Plaintiff constituted an "accident" within the meaning of Article 17 of the Montreal Convention.

22. The accident occurred on board the aircraft and during the course of the operation of disembarking.

23. As a direct result of the accident, Plaintiff suffered an acute concussion and subsequent post-concussion syndrome including vomiting, nausea, dizziness, photophobia, and cognitive fog. She also suffered serious injuries to her lower cervical spine, trapezius muscles, lower back, and right knee.

24. Plaintiff's medical treatment for her injuries is ongoing.

25. Before June 4, 2026, Plaintiff had a pre-existing condition of the right knee. The accident caused a new injury to the right knee and aggravated and accelerated that pre-existing condition, rendering it more painful, unstable, and disabling than it was before the accident. Her knee injury requires surgery.

26. As a direct result of the accident, Plaintiff continues to suffer headaches, dizziness, light sensitivity, cognitive difficulties, right knee pain and instability, back pain and impaired mobility, together with mental anguish and anxiety about air travel arising from her bodily injuries. These conditions have seriously impaired her quality and enjoyment of life and her ability to engage in normal daily functions, including, but not limited to, necessary travel for her work.

27. Plaintiff's injuries were not caused or contributed to by any negligence or other wrongful act or omission on her part.

**COUNT I**

**Liability for Bodily Injury Under Article 17 of the Montreal Convention**

28. Plaintiff repeats and realleges paragraphs 1 through 27 as if fully set forth here.

29. Article 17(1) of the Montreal Convention provides that JETBLUE is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

30. The Passenger's forcing his way past Plaintiff, striking her head and neck with his suitcase, and entangling and twisting her legs was an "accident" within the meaning of Article 17.

31. The accident took place on board the aircraft and in the course of the operation of disembarking.

32. The accident caused Plaintiff serious bodily injuries as described above.

33. JETBLUE is therefore liable to Plaintiff under Article 17 for damages to compensate her for the sequelae of her injuries that she has suffered and will continue to suffer in the future.

34. As a direct and proximate result of the accident and her bodily injuries, Plaintiff has suffered and will continue to suffer:

(a) physical pain and suffering;

(b) mental anguish, emotional distress, and anxiety, all flowing from her bodily injuries;

(c) aggravation of her pre-existing right knee condition plus new injury to her right knee requiring surgery and recovery from surgery with possible permanent impairment; and

(d) loss of enjoyment of life and impairment of her mobility and ability to carry on her usual activities.

35. Plaintiff's injuries are continuing and may be permanent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff TYMIA WIGGINS demands judgment against Defendant JETBLUE as follows:

(a) compensatory damages in an amount to be determined by the jury at trial, in excess of $75,000, exclusive of interest and costs, but not less than $2,500,000;

(b) pre-judgment interest calculated from June 4, 2026, and post-judgment interest as permitted by law;

(c) her costs of this action; and

(d) such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: November 17, 2026

Respectfully submitted,

***/s/ John D. McKay*____________**

John D. McKay
NY Bar Number 4035432
PARK AVENUE LAW LLC
2108 N Street No. 12492
Sacramento, CA 95816
Telephone: (434) 531-9569
Email: j.mckay@parkavenuelaw.com

*Counsel for Plaintiff Tymia Wiggins*